## Case No. 11,174.

### The PIONEER.

[Blatchf. Pr. Cas. 649.] [1]

Circuit Court, S. D. New York. July 17, 1863.[2]

PRIZE—ENEMY PROPERTY.

[Appeal from the district court of the United States for the Southern district of New York.]

The vessel and cargo in this case were condemned by the district court. Case No. 11,-171a. Pending this appeal, the district court, by consent of all parties, ordered the prize commissioners to sell the vessel and cargo, and to bring the proceeds into court. Case No. 11,172.

## Case No. 11,175.

### The PIONEER.

[Blatchf. Pr. Cas. 666.] [1]

Circuit Court, S. D. New York. Nov. 25, 1863.[2]

PRIZE — ENEMY PROPERTY — VESSEL OWNED BY AUSTRIAN CONSUL RESIDENT AT RICHMOND DURING CIVIL WAR—TRADE WITH ENEMY.

1. Hearing, on further proof, as to the claim by one of the owners of the vessel and cargo that he was at the time of the breaking out of the war, and at the time of the capture, a resident consul at Richmond, of the empire of Austria, recognized by this government; that his interest is not to be regarded as enemy property, inasmuch as he intercepted the vessel and cargo while on their way to a blockaded port of the enemy, and took measures to send them to a loyal port, and had thus done everything in his power to withdraw his property from the enemy's country; that, while in the act of being withdrawn, it was not liable to capture; and that he was not bound to follow it, as his duty as consul, and his right under a treaty between the United States and Austria, justified and satisfactorily explained his continued residence in the enemy's country.

2. Where a foreign consul is carrying on trade as a merchant in the enemy's country, his consular residence and character will not protect that trade from interruption by the seizure and condemnation of his property as enemy's property; and, notwithstanding his consular character, he is to be considered in all commercial transactions as on the same footing with any other resident merchant.

3. If, on the breaking out of the war, he puts an end to his business as a merchant, continuing his residence solely as consul, his property which is intercepted by him on its way to a blockaded port of the enemy, and prevented from entering that port, with a view to send it to a loyal one, should perhaps not be regarded as enemy property.

4. Decree of the district court condemning the property as enemy property affirmed. [Case No. 11,171a.]

In admiralty.

NELSON, Circuit Justice. This case comes up on further proof on the part of the claimant De Voss, one of the owners of the vessel and cargo. The firm of De Voss & Hanniwinkle were residents and engaged in business at Richmond, Virginia, at the date of the proclamation of the president of April, 1861 [12 Stat. 1259], and had been for some twenty years. The Pioneer, with a cargo of tobacco and flour belonging to this firm, sailed from City Point in the fore part of December, 1860, for Liverpool, where, after discharging her cargo, she took in a return cargo of salt for Richmond, and sailed for that port from Liverpool on the 17th of April, 1861. She reached the coast off Hampton Roads on the 20th of May, following, and was met by a pilot with a letter from the owners, advising the captain

---

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirming Case No. 11,171a.]

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirming Case No. 11,171a.]

of the proclamation and of the blockade of the port, and instructing him not to attempt to enter, but to change his course to the port of Baltimore. While in the act of obeying these instructions, the vessel was discovered by one of the blockading squadron, and was seized as prize of war, and sent to this port for adjudication. The court below condemned the vessel and cargo, not for breaking the blockade, but as enemy property. [Case No. 11,171a.] On an appeal to this court this decree was affirmed within the rule established in the case of The Hiawatha [Case No. 6,450] and that class of cases, decided in the supreme court of the United States. [Case No. 11,174.]

The new proof now offered, and which was received by consent of the United States district attorney, is, that De Voss, one of the partners, was, at the time of the breaking out of the war, and at the time of the capture, a resident consul at Richmond, of the empire of Austria, recognized by this government. Upon this new fact, in connection with the case as before presented, it is now insisted by the learned counsel for the claimant that the interest of the partner De Voss is not to be regarded as enemy property, inasmuch as, having intercepted the vessel and cargo, and taken measures immediately to send them to a loyal port, and having thus prevented the property from entering the port of the enemy, he had done every thing in his power, under the circumstances, to withdraw it from the enemy's country, which he had a right to do within the rules of international law; that, while in the act of being withdrawn, it was not liable to capture; and that he was not bound to follow it, as his duty as consul and his right under a treaty between the United States and Austria justified and satisfactorily explained his continued residence at Richmond, in the enemy's country.

It is admitted that, in the case of a foreign consul who is carrying on trade as a merchant in the enemy's country, his consular residence and character will not protect that trade from interruption by the seizure and condemnation of his property as enemy property; and that, notwithstanding his consular character, he is to be considered, in all commercial transactions, as on the same footing with any other resident merchant. The mere fact, therefore, that De Voss was a resident consul, cannot confer upon him any privileges, so far as concerns his commercial transactions, over any other merchant resident in the enemy's country. He stands on the same footing as his partner, Mr. Hanniwinkle. His property, engaged in a trade which is carried on in the enemy's country, finds no exemption, according to the international code, from the laws of war.

I agree that if, in addition to his consular character, it had been shown that, on the breaking out of the war, he had dissolved his partnership, and put an end to his business as a merchant, continuing his residence solely as consul, there would be great force in the position that his interest in this ship and cargo, which were intercepted and prevented from entering the enemy's port with a view to send them to a loyal one, should not be regarded as enemy property. The case would have presented a strong analogy to that of a resident merchant in the enemy's country, after the commencement of the war, breaking up his business, with all reasonable diligence collecting his effects, and withdrawing both of them from the country. His consular character would have explained the reason for his not leaving the country himself. But in this case, for aught that appears—and if otherwise, it devolved on the claimant to show it, it being a material fact in his case—he has continued his partnership business the same since as before the war. I cannot, from the single fact that he diverted the property in question from the enemy's country, and especially from a blockaded port, where it was liable to capture, and sent it to a loyal one, infer that this was followed up by his putting an end to his business as a merchant at Richmond. If not, I must regard him as I would any other merchant engaged in trade in the enemy's country.

Decree below affirmed.